HENRY L. ROGERS, ADMINISTRATOR, ETC., OF HIRAM CRANDALL, DECEASED, AND JAMES S. SQUIRES, RESPONDENTS, *v.* FRANK J. SQUIRES, APPELLANT.

*Administrator — power of, to assign assets of the estate — right of the assignee to sue thereon.*

APPEAL from a judgment in favor of the plaintiffs, entered on a verdict directed at the circuit, and from an order denying a motion for a new trial, made on the minutes of the justice before whom the action was tried.

This action was brought on eight promissory notes and a recovery had for the aggregate amount thereof. These notes were all given by the defendant herein named to the payee therein named, D. C. Squires, and were outstanding and unpaid at the time of his, the payee's death, and represented a portion of his estate. One Jerome Squires was appointed administrator of the estate of D. C. Squires, the payee named in the notes. After the death of the payee and the appointment of Jerome as administrator, these notes, which had come into Jerome's hands as administrator, were transferred by him to the original plaintiffs, Hiram Crandall and James Squires, to secure them for their liability on the bond given by Jerome as the administrator of D. C. Squires, as well as for a judgment or claim of $3,200 or $3,300, which had been obtained or

presented against the estate of D. C. Squires, which had been paid or secured by them.

The court at General Term said: "So far as the defenses set up in the answer are concerned, we are satisfied that they were correctly disposed of at the trial by the learned judge who presided thereat, except so far as the question which is fairly raised and presented for our consideration is concerned, viz.: Whether the plaintiffs had such an interest in the notes as to enable them to maintain this action. They were notes given to D. C. Squires by his son, the defendant. All but two of them were non-negotiable. As such on the death of the payee they became the property of his estate, and of course came into the hands of Jerome as the regularly appointed administrator, as assets to be collected and disposed of according to law. He probably had no legal right to divert them from this purpose by any transfer of the same for his own benefit, like turning them out as security for his own personal benefit, to secure his own debts or to indemnify friends who had seen fit to become sureties upon the bond which the law required for his faithful performance of his duty as such administrator. Still he was made such administrator and gave the bond required by law. If he diverted any of the assets of the estate to its prejudice, or the prejudice of creditors or heirs interested therein, he was bound to account for every dollar of the assets so diverted, or if personally irresponsible so to do, the sureties on his bond would be obliged to do so. If any of the assets had been turned over to them it would be no excuse for them to say that they held such assets for their own personal benefit or indemnity for becoming such sureties.

"The only question then is, did the plaintiffs have such an interest in the notes as to enable them to maintain the action? This question we think can only be answered in the affirmative. The defendant owed the estate these notes, and the administrator was entitled to insist upon their payment, even if the distributive share of the defendant in his father's estate after the payment of all debts and expenses might equal or exceed the amount thereof. The administrator Jerome could have appointed the plaintiff his agents or attorneys to collect such notes, and payment to them would have discharged the defendant. No one can doubt but that the administrator could have sold such notes, receiv-

ing the full amount due thereon, to a third person, and such sale would have operated as a perfect transfer of the notes, and the right of the transferee to collect could not legally be questioned. In this case the title of the plaintiffs was two-fold : First. As security to the plaintiffs for becoming sureties upon the bond of the administrator. Second. To secure them for $3,200 or $3,300 actually paid for the benefit of the estate.

"As more than intimated heretofore, if this operated as any diversion of the funds or injury to the estate, the administrator would not be relieved or absolved. He was obliged to account for every dollar represented by these notes, and any failure to do so would give the parties, or any of them interested in the estate, the right to look to and hold the sureties for the amount of such injury or diversion. In a word, we think the defendant was in no position to set up, or defend these notes on the ground of, any failure of interest in or ownership thereto on the part of the plaintiffs. The title of the plaintiffs was sufficient to maintain this action. (*Nelson & Sturges* v. *Edwards*, 40 Barb., 279 ; *Nelson and others* v. *Wellington*, 5 Bosw., 178 ; *Leitch* v. *Wells*, 48 N. Y., 585–595 ; *Middlebrook* v. *Merchants' Bank*, 41 Barb., 490 ; *Barlow* v. *Myers*, 24 Hun, 290.)

" So ne of the cases above cited sustain the proposition (if indeed authorities are necessary on such a question) that an executor or administrator is vested with the legal title to all the assets and may sell or pledge them at his pleasure. His responsibility, and that of the sureties upon his bond, is to the parties interested for any failure or neglect to faithfully execute his trust whereby injury or loss is sustained."

*B. T. Wright*, for the appellant.

*Waters & Knox*, for the respondents.

Opinion by OSBORN, J. ; LEARNED, P. J., and RUMSEY, J., concurred.

Judgment and order affirmed, with costs.